HIRAM RICKER AND SONS, In Equity,

*vs.*

PORTLAND AND RUMFORD FALLS RAILWAY.

Androscoggin.    Opinion June 2, 1897.

*Equity.  Practice.  Trade-Mark.  Poland Spring.  R. S., c. 77, § 17 ; Equity, Rule XXII ; Stat. 1893, c. 156.*

Where an answer to a bill in equity is filed containing, as permitted by the practice in this State, a demurrer, *held;* that either party may then set the cause for hearing on the demurrer alone, before replication filed. But if the complainant files a replication to the answer, then he only can set the cause for hearing before the lapse of sixty days, within which time testimony may be taken.

When a cause is set down for hearing generally and not specifically on the demurrer, after replication filed, and before the expiration of sixty days after issue joined, *held;* that in the absence of agreement of parties this could be done by complainant alone. *Held;* that the effect of such proceeding is a waiver of the replication and the cause is set down for hearing on bill, answer and demurrer, the answer to be taken as true. Upon such hearing, the bill, answer and demurrer are all to be passed upon by the court.

The plaintiffs alleged in their bill, praying for an injunction, that the use of the words " Poland Springs " by the defendant railway to designate its station in the town of Poland, where the plaintiffs have a spring of water with the same name, besides a large hotel, endangered their trade-mark in the name of " Poland Spring water;" and also alleged that water shipped from the defendant's station may be marked " Poland Spring water " and sold in competition with the plaintiffs' water. The bill did not allege that this had been done, or was threatened to be done, by the defendant or any one else.

*Held;* that conceding the plaintiffs have a trade-mark, it has not been infringed upon, nor threatened to be infringed upon, by the defendant. The defendant is a railroad company, chartered for the transportation of persons and merchandise, as a common carrier, and only for that. It would be ultra vires for it to enter upon the business of bottling, shipping and selling water, or to enter into commercial business not necessary and incident to its business of common carrier. Until it does or threatens to do this, the plaintiffs are not injured and have no cause for an injunction upon that ground.

*Held;* that because the plaintiffs for a series of years had run a stage line from Danville Junction, a station on two other railroads, to their hotels, affords no legal right to exclude another stage line over the same route; and much less

from another station upon another railroad to the same destination, so long as the new line is not represented in some way as that of the plaintiffs, or by this means a fraud is perpetrated upon the traveler or the plaintiffs. Such competition is not open to legal objection in the absence of fraudulent representation.

IN EQUITY. ON EXCEPTIONS AND APPEAL.

The case appears in the opinion.

*Elder, Wait and Whitman,* of the Boston bar; *A. R. Savage and H. W. Oakes; W. H. Newell and W. B. Skelton,* for plaintiffs.

Plaintiffs' stage line: *Marsh* v. *Billings,* 7 Cush. 322; *Stone* v. *Carlain,* 2 Sandf. 738; *London Genl. Omnibus Co.* v. *Turner,* 38 Solic. Jour. 457; *Croft* v. *Day,* 7 Bevan, 84; *Knott* v. *Morgan,* 2 Keen, 213; *Boulnois* v. *Peake,* L. R. 13 Ch. Div. 513, n.

The arm of a court in equity will not be shortened because this is a sale of transportation and not of merchandise. If amusements and hotels are protected against unfair competition, there would seem to be no reason why transportation may not be.

It is no answer to say that the plaintiff can change its stage line to the defendant's station, and that the latter is nearer Danville Junction. The plaintiff has a right to be protected against unfair competition in the stage route which it has for years operated. It has a right to receive its passengers at a point which they can reach most conveniently. Fraud will be presumed from the intentional use or simulation of a name rendered valuable by another. *Glen & Hall Mfg. Co.* v. *Hall,* 19 Am. Rep. 278; S. C. 61 N. Y. 226. See Browne on Trade-marks, §§ 96 to 101. The name of an amusement will be protected, *i. e.* Christie's Minstrels. *Christie* v. *Murphy,* 12 Howard Pr. 77.

The name of a coal company, though not a trade-mark. The Pall Mall Guinea Coal Co. an infringement on The Guinea Coal Co., though both in Pall Mall. *Lee* v. *Haley,* L. R. 5 Ch. App. 155.

Though the name "Stone Ale" could not be protected as a trade-mark, it was protected because defendant's use of the name was unfair competition and likely to mislead the public. *Thompson* v. *Montgomery,* 41 Ch. D. 35.

So of Colton Dental Association, *Colton* v. *Thomas*, 2 Brews. 308.

So of New York Dental Rooms, which was protected against Newark Dental Rooms. *Saunders* v. *Jacobs*, 20 Mo. App. 96.

So of "Golden Lion" on a dry goods house. *Walker* v. *Alley*, 13 Grant, Up. Can. Ch. 366.

So of bronzing horseshoe nails without any name. *Putnam Nail Co.* v. *Bennett*, 43 Fed. Rep. 800.

So of names of hotels. What Cheer House. *Woodward* v. *Lazar*, 21 Cal. 448; Irving House. *Howard* v. *Henriques*, 3 Sandf. 725.

"Keystone Line." *Winsor* v. *Clyde*, 9 Phila. (C. P.) 513.

Browne on Trade-marks, 2 ed. § 528; Harvard Law Review, Vol. IV. 321. Title on Certain Cases analogous to Trade-marks.

Injury to Trade-Mark: *Taendslicksfabricks Atkaibolaget Vulcan* v. *Meyers*, 139 N. Y. 364; *Wheeler* v. *Johnson*, 3 L. R. Ireland, 284.

Whatever the law may be generally in regard to the use of a geographical name as a trade-mark, (*McAndrew* v. *Bassett*, 4 De G. J. & S. 380), the law is well settled that when the plaintiff is the sole owner of the entire tract to which the name in question is applied, his use of that name as a trade-mark will be protected. *Wotherspoon* v. *Currie*, L. R. 5 H. L. 508; *La Republic Francais* v. *Schultz*, 57 Fed. Rep. 37; *Parkland Hills, etc., Co.* v. *Hawkins*, 26 S. W. 389; *Braham* v. *Beachim*, 7 Ch. Div. 848; *Carlsbad, etc.*, v. *Kutnow*, 71 Fed. Rep. 167, affirming 68 Fed. Rep. 794.

*W. H. White and S. M. Carter; G. C. Wing; G. D. Bisbee; J. P. Swasey and E. M. Briggs*, for defendant.

As used, the word "Poland" is a geographical word, being the name of a town, and as such is free to every one to use as he sees fit. *Canal Co.* v. *Clark*, 13 Wall. 322; *Mill Co.* v. *Alcorn*, 150 U. S. 460.

Not only is the name of a town free to all, but likewise the name of a locality or region, although it has no distinct political existence, as "Green Mountains" and "Genesee Valley." *Hoyt*

v. *Lovett*, 71 Fed. Rep. 173; *Genesee Salt Co.* v. *Burnap*, 67 Fed. Rep. 534.

The words are used by the defendant in a strictly geographical sense,—not as part of a trade-mark or trade name, or for indicating the place of manufacture of an article offered for sale, or the locality in which it is produced, but for giving a name to a particular place, and a station upon its railroad, representing as such stations do the surrounding locality. Hence the rules of law applicable to trade-marks and trade names do not govern such a use of geographical terms. But even if the question were as to the right to the use of these words in a trade name, the same rule would apply as to such use. The cases cited above were trade name cases. The name of a state, town, or city can never be protected except under special circumstances. *Carlsbad* v. *Tibbetts*, 51 Fed. Rep. 852; *Candee* v. *Deere*, (5 Am. Rep. 125,) 54 Ill. 439; *Connell* v. *Reed*, 128 Mass. 477; *Nebraska Loan & Trust Co.* v. *Nine*, 27 Neb. 507, (20 Am. St. Rep. 686).

There never can be an exclusive property in a geographical name. The only rights in connection therewith are to have the improper use of it enjoined. *Chadwick* v. *Covell*, 151 Mass. 190; Pomeroy's Eq., § 1354.

The underlying principles of all these cases is fraud, unfair competition in business as opposed to fair competition. *Dover, etc.*, v. *Fellows*, 163 Mass. 191.

If the public were unfairly deceived by tickets and route advertised by defendant, it would be a matter between the public and the defendant,—a question of damage. This plaintiff could not maintain a bill to enjoin such tickets and advertisements unless he could show in himself exclusive right to transport passengers to Poland Springs. *N. Y. & Rosendal Cement Co.* v. *Cockley Cement Co.*, 44 Fed. Rep. 277; affirmed 45 Fed. Rep. 212.

SITTING: PETERS, C. J., FOSTER, WHITEHOUSE, WISWELL, STROUT, JJ.

STROUT, J.    Bill in equity praying an injunction against the use by defendant of the words "Poland Springs" and "Poland Springs

Junction" to designate two stations upon its road. Answer was filed, which contained, as permitted by our practice, a demurrer. Either party could then set the cause for hearing on the demurrer alone, before replication filed. But complainant filed replication to the answer. After that, complainant only could set the cause for hearing before the lapse of sixty days, within which time testimony could be taken. R. S., c. 77, § 17, as amended by c. 156, of laws of 1893; Equity Rule 22.

This cause was set down for hearing generally, and not specifically on the demurrer, after replication filed, and before the expiration of sixty days after issue joined. In the absence of agreement of parties, this could be done by complainant alone. The effect of this proceeding was to waive the replication, and set the cause for hearing on bill, answer and demurrer, the answer to be taken as true. Upon such hearing, the bill, answer and demurrer were all to be passed upon by the court. *Dascomb* v. *Marston*, 80 Maine, 230. Hearing was had by a single justice, and by him the demurrer was sustained and the bill dismissed. The case comes here upon appeal from that decision and exceptions to the ruling. The appeal vacated the decree below. And the cause would now regularly be heard by this court upon the bill, the answer taken as true, and the demurrer contained in the answer; but as counsel have argued the demurrer alone, we confine our opinion to it.

The complainant owns a tract of land in Poland, upon which are two hotels; one known as the "Mansion House," and the other as the "Poland Spring House," with accommodations for over five hundred people in both houses. The bill alleges that upon said tract of land there is "a spring of water known as the Poland Spring, which water is of great medicinal and commercial value and has been for upwards of thirty years. That it is widely sold throughout the United States and foreign countries." . . . "That it is of great value, both because of the patronage which it draws to said hotels, and because of its wide sale." That it has been for many years sold "under the name of Poland Spring water or Poland water, natural mineral spring water;" and that said name is of great value "as a trade-mark;" and that "by reason of the

reputation of the water from said spring and of the popularity and reputation of said hotels," the tract of land has been for many years and still is known as "Poland Spring" or "Poland Springs."

The defendant operates a railroad running from Mechanic Falls to a point on the Maine Central railroad about three miles east of Danville Junction, and has upon its line a station at a point nearest to complainant's property, and about two miles distant therefrom, which is named and called "Poland Springs;" and at its junction with the Maine Central, it has a station called "Poland Springs Junction." The bill alleges that, at or near said station named "Poland Springs," there is no house, shop or settlement requiring the existence of said station."

Complainants allege that the use of the words, "Poland Springs," by defendant "to designate its station," endangers their trade-mark in the name of "Poland Spring water;" and that water shipped from defendant's station may be marked "Poland Spring water," or "water from Poland Spring," and sold in competition with complainants' water. There is no allegation in the bill that this has been done, or is threatened to be done, by the defendant or any one else.

It may be conceded that the complainants have a trade-mark, as claimed; but it has not been infringed upon, nor threatened to be infringed upon, by the defendant. Defendant is a railroad company, chartered for the transportation of persons and merchandise, as a common carrier, and only for that. It would be ultra vires for it to enter upon the business of bottling, shipping and selling water, or to enter into any commercial business, not necessary and incident to its business of common carrier. Until it does, or threatens to do this, the complainants are not injured, and have no cause for an injunction upon that ground. The cases cited by the learned counsel for complainants in his very able and instructive argument, in relation to trade-marks, have no application to the facts of this case.

Complainants allege that the name "Poland Springs," given to defendant's station nearest complainants' property, tends to deceive the public, and induce the belief that the station is at the com-

plainants' hotel property. It is matter of common knowledge that the stopping places on railways are stations upon the road. The names given to such places indicate only that passengers, destined for the place named, are to alight at that station, as the nearest or most direct point from which to reach their destination. The word "station" is not added to the name, because it is implied from the universal understanding of railway travelers. In many instances the station is named for a town, which may be several miles distant from the station. It is universally understood to be the station, which may be either at the place sought, or the nearest approach to it from the railway. Naming this station " Poland Springs," does not mean, and probably no railway traveler, familiar with the practice of naming stations on railways, ever supposed it meant, the " Poland Spring hotel," or the Poland Spring property. It appeared to be admitted at the arguments, that if defendant had added the word "station" to that of " Poland Springs," there would have been no objection. But the word station is so universally implied, that it would be superfluous to add it. Every regular stopping place of a railway train, where it receives or leaves passengers, is a station, and universally so understood.

The station is called "Poland Springs," in the plural. The trade-mark claimed by complainants, is " Poland Spring," indicating one only. The station name indicates the nearest approach by that railway to the mineral springs in Poland, not to any particular one.

The bill alleges that defendant has contracted with the Maine Central and Boston and Maine railroads, to sell tickets with coupons marked " Poland Springs;" and that the holders intending to visit complainants' " hotel property " are misled thereby to suppose they are to be transported to complainants' " hotel property ;" and the complainant " is greatly and peculiarly injured in its said stage line and in its said hotel and spring water properties." It is not claimed that defendant owns or manages any hotel, or threatens to do so, in competition with complainants' hotels.

It would seem that a railroad, which carried guests four miles nearer complainants' hotels than any other railroad, would benefit

the hotels by tending to increase their patronage, as travelers are apt to seek the quickest and easiest transportation to their destination.

But the gravamen of complainants' bill, is that "for many years a stage line, now owned by complainants, has been operated throughout the year from its said property to Danville Junction, on the line of the Maine Central and Grand Trunk Railways, receiving from said companies all passengers holding tickets with coupons entitling the holder to be transported by this stage line to plaintiffs' property." These tickets, with stage coupons, it is alleged, were issued by various railroads, presumably by arrangement with complainants; and thus the profitable transportation by stage was insured to the complainants. There is no allegation in the bill that the facilities for transportation from defendant's station, named Poland Springs, to complainants' hotel, are not ample and convenient. In the absence of such allegation, it is fair to presume that no complaint is made upon that ground by complainants or travelers visiting complainants' hotels. It is admitted that the distance from defendant's station to complainants' hotels, is four miles less than by complainants' stages from Danville Junction; and travelers can reach complainants' hotels from defendant's station, with much less fatigue than by complainants' stages. Yet the complainants ask this court, sitting in equity, to aid it in deceiving travelers desiring to visit its hotels, into the belief that the only practicable approach thereto is by way of Danville Junction, and thus secure to it the profits on six miles of stage transportation, as a gainful monopoly, although the traveler is thereby subjected to four miles of unnecessary stage ride, which to the aged, infirm or timid, is a serious inconvenience. The widely reputed medicinal quality of its water, naturally attracts to complainants' hotels a large number of the weak and invalids who hope for benefit from its use. They should be freed, as far as practicable, from unnecessary annoyance or fatigue on their journey thither.

The principle in *Marsh* v. *Billings*, 7 Cush. 322, and kindred cases, does not apply. In that case the defendant was restrained

from placing the words, Revere House, on his coaches and the caps of his drivers, because it tended to lead the public to believe the coaches were owned or controlled by the proprietors of the Revere House.  Defendant in that case was engaged in the business of carrying passengers to and from the railroad stations to hotels; and it was the well known custom for hotels to indicate to the public the coaches controlled by them, by the name of the hotel upon the coaches and caps of the drivers.  A railway, as a common carrier of passengers, terminates the transportation at its station, and does not undertake to carry passengers to any hotel, or other special place, beyond its station.  The name of its station involves no such implication.  The name of defendant's station would not justify or suggest the inference, that the line of stages from the station to complainants' hotel was owned or controlled by the complainants.

The fact that complainants for a series of years had run a stage line from Danville Junction to their hotels, affords no legal right to exclude another stage line over the same route; much less from another station upon another railroad to the same destination, so long as the new line is not represented in some way as that of complainants, and by this means a fraud is perpetrated upon the traveler, or the complainants.

The duty of the railway was accomplished when it furnished safe egress to its passengers at their terminal station, in the absence of special contract for farther transportation.  If the passenger's ticket contained a coupon for conveyance from the station to complainants' hotel, the natural implication would be that the stage connection was controlled by the railway rather than by complainants.  It is not charged that any representation, that this stage communication was that of complainants', was made in fact; and no fraud, to the injury of complainants' line, is shown to have been practiced.

It is inconceivable that travelers, familiar with the connection of the Maine Central and Grand Trunk railways at Danville Junction with a stage line to Poland Spring hotel, should suppose, when they alight from defendant's road at its station "Poland

Springs," several miles from Danville Junction, and take stage to complainants' hotels, that they are being conveyed by the stage line running from Danville Junction, or one controlled by the same proprietors. And if they did, in the absence of express fraudulent representation, complainants could not object;—one approach being from the Maine Central or Grand Trunk at Danville Junction, the other from defendant's road at a station about three miles east of Danville Junction,—two independent lines from different railroads, by different routes, to the same ultimate destination. Such competition is not open to legal objection, in the absence of fraudulent representation. And if not familiar with the connection at Danville Junction, the traveler would be without knowledge of the proprietorship of the stage line from thence, and would have no preference for complainants' line over any other affording as good accommodation. *Marsh* v. *Billings*, supra, rests upon the ground that the defendant fraudulently represented his coaches to be those employed or controlled by the Revere House. The liability in that case, the court says, was not " that they had the words Revere House on the coaches and on the caps of the drivers merely, but that they falsely and fraudulently held themselves out as being in the employment, or as having the patronage and confidence of the lessee, of the Revere House."

The case stated by the bill does not entitle the complainants to the relief prayed for. The demurrer was rightly sustained.

*Decree affirmed; demurrer sustained.*
*Bill dismissed with additional costs.*